## UGLAND v. KOLB.

### (134 N. W. 879.)

**Contracts — mutuality — specific performance.**

1. Plaintiff has acquired two quarter sections of land from the government, which land he contracted to sell to one Kuchenbecker upon what is known as a contract for deed. Kuchenbecker, assuming to act as owner of the land, though without paying the full purchase price and receiving himself a deed therefor, made a similar contract to sell the said land to Kolb for some $850 more money than he was paying to Ugland. Kuchenbecker paid about one fifth of the purchase price and defaulted. Kolb paid about the same amount upon his contract. After two years Ugland brings this action to quiet his title, proving that he had served notice of cancelation upon Kuchenbecker. Kolb defends the action and shows that he had offered to Ugland all of the money, excepting $150, which he wished to keep back to clear the title,— due upon Kuchenbecker contract. Ugland showed that at the time of the offer the contract between himself and Kuchenbecker had been assigned to one Brennan as security for a loan, and had never been redeemed. He also showed that the objections to his title were frivolous. It also appeared that Kuchenbecker had made a deed of the premises to Kolb, but said deed was made after the assignment of his contract to Brennan, and had never been delivered to Kolb, but was made at a time when Kolb expected to borrow enough money upon the land to pay Ugland in full; held:

That there was no mutuality of contract between Ugland and Kolb, and as Kolb could not have been compelled to specifically perform to Ugland, neither should Ugland be compelled to perform to Kolb. Also that the contract could

not be specifically performed until redeemed from Brennan. Kolb having no interest in the contract or land, the trial court properly quieted the title as against him.

Brennan and Ugland, having made no appeal, are also precluded by the judgment.

Opinion filed January 30, 1912. Rehearing denied February 27, 1912.

Appeal by defendant Kolb from a judgment of the District Court for Ramsey County, *Cowan*, J., in plaintiff's favor in an action brought to quiet title to certain land.

Affirmed.

*Middaugh & Cuthbert*, for appellant.

Appellant is entitled to a decree for the specific performance of the contract of sale. Brown v. Haff, 5 Paige, 235, 28 Am. Dec. 425; Brown v. Newman, 15 N. D. 1, 105 N. W. 941; Kicks v. State Bank, 12 N. D. 576, 98 N. W. 408.

*John J. Sampson* and *C. J. Sampson*, for respondent.

Appellant must show performance on his part before he can seek equitable relief of specific performance. 3 Pom. Eq. Jur. §§ 455, 1407; Hubbell v. Von Schoening, 49 N. Y. 326; Leaird v. Smith, 44 N. Y. 618; Crabtree v. Levings, 53 Ill. 526; Morse v. Seibold, 147 Ill. 318, 35 N. E. 369; Kimball v. Tooke, 70 Ill. 553. See also Carter v. Phillips, 144 Mass. 100, 10 N. E. 500.

Burke, J. During all of the times hereinafter mentioned the plaintiff Ugland was a farmer living upon a half section of land in Ramsey county, North Dakota, which land he had acquired under the homestead and pre-emption laws of this country. In April, 1902, he made a contract to deed said premises to one Kuchenbecker. Said contract was in the usual form of contract for deed, and provided that if Kuchenbecker should first pay to Ugland the sums of $200 cash; $500 July 1, 1902; and $2,630 September 1, 1902, and further assume a mortgage against the land of some $1,200 and interest, then Ugland would deed the land to said Kuchenbecker. The contract also contained the provision that in case the purchaser failed to make the payments, the contract should become forfeited and determined at the option of the seller, and that all payments made thereon prior to its

forfeiture shall be retained by the seller as damages by him sustained, and time was made of the essence of the contract. Kuchenbecker made the first two payments amounting to $700. It also appears that very shortly after the purchase of the land upon contract with Ugland, Kuchenbecker, acting as owner of the land, made a contract for deed with one Kolb, a farmer of Iowa. This contract was very much like the one between himself and Ugland, but the price of the land in the second contract was some $850 higher. The payments of the second contract were so timed as to take care of those due upon the first, but Kolb evidently was somewhat slow with the $500 payment which should take up the payment due Ugland July 1, 1902, and Kuchenbecker, to avoid a default, went to the defendant Brennan, a lawyer of Devils Lake, and borrowed $600 wherewith to make the payment to Ugland. To secure Brennan, he (Kuchenbecker) made an assignment in writing of his contract with Ugland, which assignment was duly acknowledged July 9, 1902, and duly recorded in the office of the register of deeds of the proper county. At the trial below, Brennan testified that he had never been fully repaid and had never reassigned the contract to Kuchenbecker, but was still the owner thereof.

September 3, 1902, Kuchenbecker notified Ugland that he was ready to make final payment and receive his deed, and requested Ugland to come into town with his wife. Ugland complied, and a deed was prepared by Kuchenbecker, running to himself as grantee, and this deed was duly signed and acknowledged by Ugland and wife, but such deed was never delivered. Ugland, his wife, Kolb, and Kuchenbecker then went to a bank of which one Baird was an officer, when it appeared that the bank was to advance the money for final payment upon receiving a first mortgage upon the land. Kuchenbecker and his wife executed a deed to the premises, to Kolb, and Kolb, in his turn, executed a mortgage for some $2,600 to the bank. It was in this manner that the money due Ugland was to be raised. Kolb, it appears, brought from Iowa, enough money to pay up the $1,200 mortgage already against the land. When all of the parties were gathered in the bank, Baird asked Ugland for the deed so he might take it to the courthouse. Ugland declined to make delivery until he had received his money. Thereupon the parties withdrew from the room, leaving Ugland and his wife alone for about twenty minutes.

When they returned they told Ugland that his title was not perfect and that they were going to keep $150 of the purchase price for the purpose of having it perfected. Ugland declined to receive the balance, and Baird then offered him $2,480 in currency for his deed. This was $150 less than the amount due, and it was declined by Ugland. Baird then offered him the full amount if he would give perfect title, and Ugland insisted that his title was perfect, but Baird would not give him the full amount while the title was in the condition mentioned. Kuchenbecker then signed and served upon Ugland a notice that he had failed to perform the conditions of the contract for deed, and demanding performance.

There was no money deposited to Ugland's credit in Baird's bank or elsewhere, but Kolb left with Baird about $1,400, being the money brought by him from Iowa, for a period of about one year, when that was withdrawn. Ugland retained possession of his farm and is still in possession. December 8, 1902, he served upon Kuchenbecker a notice of cancelation of the contract between them upon the ground that the $2,600 due September 1, 1902, had not been paid. Neither Kuchenbecker nor Kolb ever did anything thereafter towards curing the default, and some two years later this action was begun by Ugland to quiet title to the land, Kuchenbecker, Kolb, and Brennan being the defendants named and served. Kuchenbecker made no appearance, and judgment by default was entered against him. Kolb and Brennan answered separately, each setting up the facts, and asking to be allowed to pay the balance due upon the Kuchenbecker contract, and that thereupon Ugland be compelled to deed the premises to him. Kolb further asks that in case Ugland cannot be made to specifically perform, that the $700 payment made to him be returned to Kolb. In the trial below it was ordered that the contract had been canceled, and that Ugland should retain the $700 as damages, excepting that he should make good to Brennan the amount still due to him. Brennan accepted the judgment and has not appealed. Kolb alone appeals, and it is with his rights alone we must deal.

The evidence is practically undisputed, and it appears that the only title or interest that Kolb can have in the land is that acquired from Kuchenbecker. He has no assignment of the contract between Ugland and Kuchenbecker. What he had was a separate and distinct

23 N. D.—11.

contract with Kuchenbecker. Ugland had no dealings with Kolb whatever. Even at the last day when the deed from Ugland was signed and acknowledged, it was made to Kuchenbecker, and not to Kolb; and Kolb himself testifies that he knew of the fact and was satisfied with it. The payments were made by Kuchenbecker to Ugland. While there is testimony to the effect that Ugland knew that Kuchenbecker had sold the land to Kolb, there is nothing to show that Ugland knew that Kolb would call upon him for a deed. In fact Ugland could not have forced Kolb to pay to him one cent of the purchase price. As Kolb could not be forced to specifically perform the contract between Kuchenbecker and Ugland, he cannot force Ugland to perform. See Knudtson v. Robinson, 18 N. D. 13, 118 N. W. 1051; Rev. Codes 1905, § 6610.

Kolb, not being entitled to specific performance, has no standing in this suit. Not being the assignee of the first contract, he is not the successor in interest to Kuchenbecker thereunder. It is true that Kuchenbecker executed a deed in favor of Kolb at the time when it was necessary to complete Kolb's title to get the $2,600 loan upon the land, but there is no evidence of the absolute delivery of said deed, and there is positive evidence that Kolb only paid to Kuchenbecker $800 of the $5,500 purchase price. Had Kolb paid to Ugland every cent due upon the first contract, still Kuchenbecker would have had some $850 coming from Kolb, and this has never been paid. Besides all this, it also appears that at the time Kuchenbecker gave such deed to Kolb, he had already assigned his contract to Brennan, and had never redeemed it. We are unable to see where Kolb has the slightest right to compel specific performance or recover any part of the money paid to Ugland by Kuchenbecker. And still further, an examination of the title to the land shows that Ugland's title was all right. He had received patents from the government and had given an old mortgage upon the land. While the satisfaction of this mortgage was not entirely regular, yet Ugland had the original notes and mortgage in his possession, and a satisfaction obtained at the request of Baird and his attorneys, the same men who objected to the title at the meeting at the bank. It also appears that Baird had made one loan upon the same title not two years before, and the title had been passed upon at that time by the same attorney. The matter is not

material, but the fact remains that the objection to the title was frivolous.

But one other matter needs attention. The trial court found that the contract had been legally canceled as to Kuchenbecker and Kolb, but ordered that Brennan be paid the amount due upon his assignment of the contract, and Brennan has not appealed. The judgment below inadvertently says that Ugland shall retain the balance of the $700 payment made to him by Kuchenbecker for the purpose of paying his attorneys. This should be changed so as not to interfere with Ugland's right to make his own contract with his attorneys.

As the trial court has ordered that Ugland pay to Brennan a certain sum of money in satisfaction of his claim, and as neither Brennan nor Ugland has appealed, we cannot see how we could disturb this part of the judgment upon an appeal by Kolb, who, as we have seen, has no interest in the land.

The judgment is affirmed.

BRUCE, J. I concur generally in the result; I am not inclined to believe, however, that the title offered by Ugland was a merchantable one.

FISK, J. (dissenting).

I cannot concur in all that is said in the majority opinion. Briefly stated my views are as follows:

First. Plaintiff who seeks the equitable relief of having defendant's rights cut off and declared forfeited by the judgment is himself in default, and therefore stands in an unfavorable light in a court of equity. The title which he tendered pursuant to the contract, while perhaps good as a matter of fact, was not a merchantable title as a matter of record, for the reason that the record disclosed a mortgage on the land which was not properly satisfied. At the time he tendered the deed he had in his possession the canceled notes secured by such mortgage, and although he knew that the vendee and those claiming under him objected to the title because of such defect appearing of record, he made no mention of the fact that he had such notes in his pocket. This alone would warrant the court in denying him any relief.

Second. Conceding, for the sake of argument, that plaintiff had an unquestioned merchantable title of record, and that the vendee, Kuchenbecker, was in default in making the payment due on September 1, 1902, still plaintiff waived such default by not proceeding at once to take advantage thereof as stipulated in the contract. The contract contains the usual stipulation that "in case of failure of the said party of the second part to make either of the payments, or to perform any of the covenants on his part hereby made and entered into, this contract shall, at the option of the parties of the first part, be forfeited and determined, *time being the essence of this agreement.*" It is well settled that the provision that time shall be of the essence of the contract applies to the vendor as well as to the vendee. As said by this court in Fergusson v. Talcott, 7 N. D. at page 190, 73 N. W. 207, "Time being of the essence of the entire contract, it was as much incumbent on the plaintiff to act promptly in giving his notice of cancelation as it was incumbent on the defendants to deliver the wheat on the day specified in the agreement." Plaintiff waited over three months after the alleged default occurred before serving notice of his election to declare the contract forfeited. Three months was held an unreasonable delay in the Fergusson case, supra, and operated as a waiver of the default. I see no reason why a similar holding should not be made in the case at bar. Having waived such default by waiting an unreasonable time, the vendor could not, as he attempted to do, cut the vendee off short by serving a notice such as was served in this case. He was in duty bound to give the vendee a reasonable time in which to make the default good. As I view it, therefore, the contract was not legally forfeited, but was still in force at the time the action was commenced. This being true, how should the rights of the respective parties be adjusted? The vendee, Kuchenbecker, made no appearance in the action and apparently claims no interest under the contract. Defendants Kolb and Brennan appeared, claiming as successors in interest of Kuchenbecker, Brennan as pledgee of the contract as security, and Kolb as the vendee of Kuchenbecker, and therefore his successor in interest, Brennan, has not appealed. The uncontradicted testimony discloses that Kuchenbecker entered into a contract with Kolb, agreeing for a valuable consideration to sell and convey such land to the latter, and subsequently executed and delivered to him a

deed thereof, and that Kolb paid under such contract to Kuchenbecker the sum of $800 toward the purchase price. It is also undisputed that plaintiff received, under his contract with Kuchenbecker, the sum of $700 to apply on the purchase price, which sum he still retains, although he has parted with nothing and has at all times retained possession and had the use of the land. It is admitted by the plaintiff that he knew all about Kolb's purchase from Kuchenbecker, and that Kolb claimed to be his successor in interest. Plaintiff, in effect, repeatedly recognized Kolb as such successor to Kuchenbecker; and, in his notice declaring the contract forfeited, he in fact expressly referred to Kolb as the assignee of Kuchenbecker. He was therefore, in my opinion, both equitably and morally bound to serve Kolb with a proper notice of his election to forfeit the contract. This was not done, and in my opinion, this is an additional reason why plaintiff does not stand in an equitable light, and ought not to enjoy a very favorable position in a court of equity. Notwithstanding all the above facts, I am disposed to agree with my associates that specific performance should not be compelled against plaintiff. After such a long lapse of time and changed conditions as to land values, it would not be consistent with the real equities of the case to thus adjudge specific performance. But I am convinced that if plaintiff is to be awarded equitable relief in this action, it should be only on condition that he do equity by refunding the money received by him on the purchase price. To the extent of such sum, defendants Kolb and Brennan should at least be deemed in equity the successors in interest or equitable assignees of Kuchenbecker, and such money should be divided between them as their respective rights appear.